UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOSHUA ISAIAH MORRIS,

Plaintiff,

v.                                          Case No. 24-CV-1611

YANA PUSICH, *et al.*

Defendants.

## DECISION AND ORDER ON DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

Joshua Isaiah Morris, who is incarcerated and representing himself, sues the defendants under 42 U.S.C. § 1983 for allegedly keeping him in segregation without due process in violation of the Fourteenth Amendment. The defendants move for summary judgment on Morris' claims. (Docket # 35). For the reasons stated below, the defendants' motion for summary judgment is granted.

## FACTS

At all times relevant, Morris was incarcerated at the Waupun Correctional Institution ( "Waupun"). (Docket # 37, ¶ 1.) Morris asserts that on February 23, 2024, he showed an unidentified officer a shank, resulting in him being issued a conduct report and given 60 days in segregation. (Docket # 51 at 3.) Morris states that he was supposed to be released early from segregation on March 26, 2024. (*Id.* at 4.) According to Morris, an unidentified female officer came to his cell in segregation to transfer him back to the general population. (*Id.*) Morris initially refused to return but subsequently told the officer that he changed his mind and would return. (*Id.*) Morris asserts that the officer said that she would

be "right back to get him" but no one ever returned to release him. (*Id.*) The defendants assert that Morris refused to leave segregation and thus should have been issued another conduct report for refusing to leave and disobeying orders. (Docket # 37, ¶ 25.) However, for reasons unknown to the defendants, Morris was not issued another conduct report. (*Id.*, ¶ 26.) Because another conduct report was never issued, periodic reviews of Morris' placement in segregation did not occur. (*Id.*, ¶ 27.) Morris asserts that "the administration" is responsible for conducting reviews of segregation placement. (Docket # 51 at 4.)

On May 10, 2024, the Security Director, Yana Pusich, discovered that Morris was never issued a conduct report for the March 26, 2024, incident, although it is unclear from the record exactly how she discovered the mistake. (Docket # 37, ¶ 29.) Regardless, she immediately slated Morris for release back into the general population. (*Id.*) Morris again refused to leave and received a conduct report for disobeying orders and was given a 30-day disposition for segregation. (*Id.*, ¶ 30.) Morris states that because he was already in segregation without a conduct report for 45 days, he "became afraid of staff, so he refused to leave" segregation. (Docket # 51 at 4.)

Also on May 10, 2024, Morris wrote Pusich an Interview/Information Request informing her that he had been kept in segregation for 45 days without a conduct report. (Docket # 37, ¶ 32.) Pusich does not remember whether she saw the Request, but states that she was made aware that Morris was in segregation without a conduct report on May 10. (*Id.*, ¶ 34.) Security Secretary Casey Schmude responded to Morris' May 10 Request on May 13, 2024, informing Morris that he was released from segregation on May 10, but Morris refused to leave. (*Id.*, ¶ 33.) Morris asserts that he should have been told "the steps he should take to handle the situation." (Docket # 51 at 5.)

2

Additionally, on May 10, 2024, Morris sent an Interview/Information Request to "Warden Office—P. Johnson" stating that he had been in segregation for 45 days without a conduct report. (Docket # 37, ¶ 38.) Morris states that he intended this Request to make Warden Randall Hepp aware of his situation and for Hepp "to help Morris make the right steps [because] Morris never been in this situation before." (Docket # 51 at 6.) On May 13, 2024, Warden Secretary Pamela Johnson responded to Morris' Request informing Morris that he was in segregation because he refused to leave when he was released. (Docket # 37, ¶ 39.) She also stated that Morris should wait for Pusich's response to his issue. (*Id.*)

On May 13, 2024, Morris sent another Interview/Information Request to Pusich about the fact that he was in segregation for 45 days without a conduct report or an investigation. (*Id.*, ¶ 35.) Pusich responded on May 14, 2024, stating that he refused to leave segregation on March 26, 2024, and "that it was an oversight a conduct report was not issued to him for the refusal which would document his stay" in segregation. (*Id.*, ¶ 34.)

Morris also sent another Interview/Information Request to "Warden Office—P. Johnson" about the fact that he was in segregation for 45 days without a conduct report. (*Id.*, ¶ 41.) Morris states he sent this because he knew that he had 14 days to file an inmate complaint and that he needed to show that he tried to resolve the issue informally. (Docket # 51 at 6.) On May 14, 2024, Johnson responded by referring to her previous response to his May 10 Request that Morris should wait to hear from the Security Director. (Docket # 37, ¶ 42.) She also told him that he should not write to multiple departments about the same issue. (*Id.*) Because of Johnson's role in the Warden's office and the fact that the Requests were addressed to her, she responded to the Requests, and Warden Hepp "does not recall being made aware of any issue with Mr. Morris regarding this lawsuit." (*Id.*, ¶¶ 44–45.)

3

According to Morris, he remained in segregation until July 7, 2024, when he was transferred to the Wisconsin Resource Center "because he became unstable." (Docket # 51 at 4.) He was never released back into general population at Waupun. (*Id.*, at 4–5.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-

4

moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Morris claims that the defendants violated his Fourteenth Amendment due process rights when they failed to help him address the fact that he was placed in segregation for 45 days without being issued a conduct report.

To begin, Morris has presented no evidence that Warden Hepp was involved or even aware of the fact that Morris was in segregation for 45 days without being issued a conduct report. Section 1983 "creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Hildebrant v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003) (quoting *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996)). At most, Morris asserts that Warden Hepp was part of the administration responsible for reviewing segregation placements, but even then, he offers no evidence demonstrating that Warden Hepp was personally involved in that review. To the extent that Morris argues that Warden Hepp is responsible because he is a supervisor, supervisors can be held liable for constitutional violations caused by their employees only where the violation happens at the supervisor's direction or with the supervisor's knowledge and consent. *Id.* In other words, the supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Id.* Morris does not demonstrate that Warden Hepp knew about his situation and "turned a blind eye." Summary judgment is granted in favor of Warden Hepp.

While the situation is not as clear as it is with Warden Hepp, Morris also does not demonstrate that Pusich was involved with erroneously keeping him in segregation without

5

a conduct report. Regardless, even if Morris does demonstrate that Pusich knew about the issue and did not appropriately respond, he still fails to demonstrate a constitutional violation. "A prisoner challenging the process he was afforded in a prison disciplinary proceeding must meet two requirements: (1) he has a liberty or property interest that the state has interfered with; and (2) the procedures he was afforded upon that deprivation were constitutionally deficient." *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007) (citing *Rowe v. DeBruyn*, 17 F.3d 1047, 1053 (7th Cir. 1994)). Generally, being erroneously placed in segregation for a short period of time "is too trivial an incremental deprivation of a convicted prisoner's liberty to trigger the duty of due process." *Holly v. Woolfolk*, 415 F.3d 678, 679 (7th Cir. 2005). Placement in segregation may create a liberty interest "if the length of segregated confinement is substantial and the record reveals that the conditions of confinement are unusually harsh." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 698 (7th Cir. 2009). Forty-five days in segregation without evidence of "atypical and significant hardships" is insufficient to trigger a due process violation. *See Sandin v. Conner*, 515 U.S. 472, 486 (1995) (finding that short-term placements in segregation do not trigger liberty interest); *Townsend v. Fuchs*, 522 F.3d 765, 770–72 (7th Cir. 2008) (finding that 59 days in segregation did not deprive inmate of a liberty interest); *Beamon v. Pollard*, 711 Fed. Appx. 794, 795 (7th Cir. 2018) (finding 135 days did not deprive inmate of a liberty interest). Because Morris does not demonstrate that he had a liberty interest, summary judgment is granted in Pusich's favor.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is granted. The defendants also argued that they are entitled to qualified immunity. Because the court

6

found in their favor on the merits of Morris' claims, this argument need not be addressed. As there are no remaining claims, the case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment (Docket # 35) is **GRANTED**.

**IT IS FURTHER ORDERED** that the case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 23rd day of July, 2026.


BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge


8